```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――
GUY LAURENT,
         Plaintiff,                    10 Civ. 4055 (JGK) (LMS)

      - v. -                           MEMORANDUM OPINION AND
                                       ORDER
G & G BUS SERVICE, INC., and FIRST
STUDENT, INC.,
         Defendants.
―――――――――――――――――――――――――――――――
```

**JOHN G. KOELTL, District Judge:**

Plaintiff Guy Laurent brings this action against G & G Bus Service, Inc. ("G & G"), alleging that G & G violated the prohibition of the Americans with Disabilities Act (ADA) against pre-employment medical examinations and inquiries, 42 U.S.C. § 12112(d)(2)(A). Because First Student, Inc. ("First Student") subsequently purchased the assets of G & G, the plaintiff also seeks to hold First Student liable under the successor liability doctrine.

The Court has received the Report and Recommendation of Magistrate Judge Smith recommending that the defendants' motion for summary judgment be granted. The plaintiff has objected to the Report and Recommendation, and therefore the Court reviews the Report and Recommendation de novo. 28 U.S.C. § 636(b)(1)(C); see also DeJesus v. Chater, 899 F. Supp. 1171, 1174-75 (S.D.N.Y. 1995).

1

I.

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

## II.

The Court assumes the parties' general familiarity with the record and briefly summarizes the facts as follows.  Unless otherwise noted, the facts below are undisputed by the parties.

On September 8, 2008, the plaintiff applied for a position with G & G to become a school bus driver.  (Clunis Decl. Ex. D.) On the same day, the plaintiff had an interview with Sharon Becz, G & G's vice president at that time.  (Okoronkwo Decl. Ex. 2 ("Pl. Dep.") at 22:9-12.)  The parties dispute whether Becz

made a job offer to the plaintiff on that day with the condition that the plaintiff obtain medical certification, or whether Becz declined to extend an offer until the plaintiff obtained such certification.  (Compare Clunis Decl. Ex. B ("Becz Dep.") at 51-52 with Pl. Dep. at 96 and Pl. Aff. ¶ 3; compare Defendants' Rule 56.1 Statement ("Defs.' 56.1") ¶ 15 with Plaintiff's Response to Defendants Rule 56.1 Statement ("Pl.'s 56.1") ¶ 15.)  However, it is undisputed that G & G required the plaintiff to take a physical examination and be certified by Partners in Safety, Inc. ("PIS"), an entity that handles all of G & G's needs for pre-employment physical examinations and certifications.  (Clunis Decl. Ex. N ¶¶ 9-10.)  Becz also asked the plaintiff whether he could pass a "drug test."  (Becz Dep. at 54-55.)  In addition, the plaintiff alleges, and the defendants deny, that G & G requested that the plaintiff undergo a nuclear stress test in October 2008, which, the plaintiff claims, was "invasive" and caused him emotional distress.  (Pl. Aff. ¶¶ 9-10; Pl.'s 56.1 ¶ 40; Def.'s Statement in Resp. to Pl.'s 56.1 ¶ 40.)

   On September 10, 2008, the plaintiff visited PIS for the medical examination.  (Okoronkwo Decl. Ex. 4 ¶ 10.)  He filled out part of a "Physical Examination Report," (Okoronkwo Decl. Ex. 5), and underwent a physical examination performed by a PIS employee, Patricia Quinones.  (Okoronkwo Decl. Ex. 4 ¶ 10.)  On

4

the Physical Examination Report, the plaintiff indicated that he was hospitalized in June 2008 for a "ministroke." (Okoronkwo Decl. Ex. 5.) However, the plaintiff was not sure if he indeed had a stroke, and Quinones asked the plaintiff to obtain a note from his neurologist as well as his hospital records. (Pl. Dep. at 51, 68-69.)

The parties now dispute whether the plaintiff had indeed suffered a stroke around June 2008. In any event, PIS eventually reported to G & G that the plaintiff did suffer a stroke in June, (Becz Dep. at 92-93, 101), and did not certify the plaintiff for a school bus driver position. (Clunis Decl. Ex. N ¶ 11.) In the end, based on the physical examination results provided by PIS, G & G did not hire the plaintiff because he had suffered a stroke within a year prior to applying for the position and thus failed to pass the physical examination.[1] (Becz Dep. at 97-98, 101.) The plaintiff now alleges that, as a result of these medical examinations, he suffered from injuries including lost job opportunities,

---

[1] The plaintiff disputes the precise sequence of the events and asserts that G & G's decision not to hire the plaintiff was based on the physical examination in September 2008, while PIS's refusal to certify the plaintiff only came in October 2008 after Becz had discussed with PIS a letter from one of the plaintiff's doctors. (Pl.'s 56.1 ¶ 25 (citing, inter alia, Becz Dep. at 98:15-23).) However, it is not disputed that G & G rejected the plaintiff's application because the physical examination performed by PIS reported that the plaintiff had recently suffered a stroke.

emotional distress, and two hundred dollars of out-of-pocket expenses.  (Pl. Aff. ¶¶ 12-17.)

### III.

The ADA provides that "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability."  42 U.S.C. § 12112(d)(2)(A).  However, a covered entity is permitted to "make preemployment inquiries into the ability of an applicant to perform job-related functions."  Id. § 12112(d)(2)(B).  Moreover, a covered entity

> may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if—
>
> > (A) all entering employees are subjected to such an examination regardless of disability;
>
> . . . .

Id. § 12112(d)(3).  There is no dispute that G & G was a "covered entity" under the ADA.  The plaintiff's sole remaining claim alleges pre-employment medical examination and inquiries in violation of § 12112(d)(2)(A).

An overview of the relevant regulations confirms the Magistrate Judge's finding that the physical examination and

certification by PIS were required by law.  United States Department of Transportation ("USDOT") regulations prohibit a person from operating a commercial motor vehicle[2] "unless he or she is medically certified as physically qualified to do so." 49 C.F.R. § 391.41(a)(1)(i).  In order to be certified as physically qualified, the person must have "no established medical history or clinical diagnosis of . . . vascular disease which interferes with his/her ability to control and operate a commercial motor vehicle safely."  Id. § 391.41(b)(7).  New York State Department of Motor Vehicles ("NYSDMV") regulations have a similar provision.  N.Y. Comp. Codes R. & Regs. tit. 15, § 6.10(b)(6).  In addition, NYSDMV regulations specifically require that each applicant "submit to and pass [a] physical examination" prior to employment as a bus driver.  N.Y. Comp. Codes R. & Regs. tit. 15, §§ 6.3(a), 6.3(c)(3).

Thus, the physical examination and certification by PIS were required by law as a precondition to employment.[3]  Even if

---

[2] A "commercial motor vehicle" is defined as including any vehicle that is "designed or used to transport more than 8 passengers (including the driver) for compensation" or "to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation."  49 C.F.R. § 390.5.

[3] The plaintiff maintains that the Magistrate Judge failed to consider a "nuclear stress test" that he allegedly was subjected to as part of the certification process.  However, besides the plaintiff's sole affidavit, there is no deposition testimony or any documentary evidence such as medical reports, receipts, or

the plaintiff was initially hired by G & G without a physical examination or certification, he would still be required to submit to this process, and, by failing to obtain medical certification, he would not have been able to start his job. Indeed, as one of our sister district courts has held, "[o]nce medical certification is denied, even if the denial was without basis, the transport company may not hire the applicant to drive a truck on public roads without violating DOT regulations. The purpose of such regulation is obvious: the public has a compelling interest in maintaining safe roadways." Cole v. Roadway Express, Inc., 218 F. Supp. 2d 350, 356 (W.D.N.Y. 2002).

Accordingly, the Magistrate Judge correctly found that the plaintiff would have suffered the same alleged injuries in any

---

insurance records supporting the plaintiff's contention that G & G required him to undergo that test, and the only reference to such a test was a letter from Dr. Ramaswamy on October 21, 2008 mentioning the test being conducted following the plaintiff's discharge from May 2008 hospitalization. (Clunis Decl. Ex. L.)  Indeed, the plaintiff makes it clear that the nuclear stress test he is referring to is the same test mentioned in Dr. Ramaswamy's letter, but the letter does not show that the test was ordered by G & G.  (See Pl.'s 56.1 ¶ 25.) In any event, it appears that the nuclear stress test was conducted by a cardiologist to examine the plaintiff's cardiovascular functions, and the cardiologist concluded that the plaintiff had no coronary artery disease.  (Clunis Decl. Ex. L.)  A cardiovascular disease is yet another potentially disqualifying condition for a bus driver under both USDOT and NYSDMV regulations.  49 C.F.R. § 391.41(b)(4); N.Y. Comp. Codes R. & Regs. tit. 15, § 6.10(b)(3).  The plaintiff has failed to put forth any argument or evidence demonstrating that the stress test was not a test that related to his ability to be a bus driver.

event.  Because § 12112(d)(3) permits pre-employment examinations, G & G could have extended the plaintiff an offer and then subjected him to the same medical examination and inquiries required by law; upon learning that the plaintiff failed to obtain certification, G & G would then be required to withdraw the job offer because it could not employ an uncertified driver.  The plaintiff objects to this reasoning, arguing that G & G did not make an offer at all and thus the physical examination was an automatic violation of § 12112(d)(2)(A).  Hence, the plaintiff contends that the Magistrate Judge incorrectly drew § 12112(d)(3) into the analysis.

If no job offer was ever extended, G & G indeed would have technically violated § 12112(d)(2) by subjecting the plaintiff to pre-offer physical examinations that otherwise would not have occurred until after an offer is made.  However, it is clear that "a technical violation of section 12112(d) will not in and of itself give rise to damages liability." Giaccio v. City of New York, 502 F. Supp. 2d 380, 386-87 (S.D.N.Y. 2007), aff'd, 308 F. App'x 470 (2d Cir. 2009) (summary order); see also Armstrong v. Turner Indus., Inc., 141 F.3d 554, 562 (5th Cir. 1998).  Thus, the plaintiff must show that the alleged medical examinations and inquiries constituted more than a "technical

violation" of the ADA and caused him cognizable injuries. Giaccio, 502 F. Supp. 2d at 386-87.

Because the plaintiff did not obtain medical certification required by law and would be legally barred from being employed as a school bus driver, he failed to demonstrate that the medical examinations caused him injuries cognizable under the ADA.  Regardless of whether G & G required him to undergo the examination before or after extending him an offer, he would have suffered the same alleged damages in any event: namely, the rejection by G & G, the alleged emotional distress caused by the examinations, as well as certain out-of-pocket expenses. Therefore, the Magistrate Judge correctly found that the plaintiff has failed to establish a claim under the ADA because none of the alleged injuries were attributable to the fact that he was subjected to the medical examination and certification requirement before an employment offer was extended to him, when all of those damages would still have occurred if he was subjected to the same physical examinations after an offer was made, which plainly would be permitted under the ADA.

The plaintiff additionally contends that G & G elicited information regarding his legal prescription drug usage during the job interview.  However, the evidence in the record indicates that these inquiries were job-related.  The evidence that the plaintiff cites, (Pl.'s Obj. to Report and

10

Recommendation at 4 (citing, inter alia, Pl.'s Mem. in Opp. to Mot. Summ. J. ("Pl.'s Mem.") at 10; Pl.'s 56.1 ¶¶ 1, 39, 49)), concerns two sets of inquiries.  The first set consists of questions asked at G & G's interview on whether the plaintiff could "pass a drug test" or "pass the drug screening," (Pl.'s 56.1 ¶¶ 1, 39 (citing Becz. Dep. at 13-14, 22, 54-56)), which did not appear to be directed at legal prescription drug usage and were inquiries on illegal drug usage.  These were plainly job-related inquiries, because the plaintiff would be legally barred from performing the job if he was found to be using certain controlled substances.  Both USDOT and NYSDMV regulations disqualify a person who uses "an amphetamine, narcotic, or any habit-forming drug" from driving a bus.  Id. § 391.41(b)(12); N.Y. Comp. Codes R. & Regs. tit. 15, § 6.10(b)(11).  In addition, both employers and employees are subject to drug-testing requirements.  49 C.F.R. §§ 382.103(a), 301(a).

    The second set of inquiries consists of questions on the Physical Exam Report form asking about the applicant's prescription medication usage.  (Pl.'s 56.1 ¶ 49 (citing Okoronkwo Decl. Ex. 5).)  In his motion papers, (Pl.'s Mem. at 10), the plaintiff has relied on Roe v. Cheyenne Mountain Conference Resort, 920 F. Supp. 1153, 1154 (D. Colo. 1996), aff'd in part, vacated in part on other grounds, Inc., 124 F.3d

1221 (10th Cir. 1997), for the proposition that "a policy that requires employees to disclose the prescription medication they use would force the employees to reveal their disabilities (or perceived disabilities) to their employer" and is thus impermissible under the ADA.  Cheyenne Mountain, 920 F. Supp. at 1154.  In that case, the employer provided no safety-related justification for a broad policy requiring all employees to disclose all prescription medication usage.  Id. at 1153-54, 1155.  In addition, a subsequent appellate court opinion in the case reveals that the plaintiff in that case worked as an account manager at the defendant corporation.  Roe, 124 F.3d at 1226.  By contrast, in this case, the plaintiff applied for a position as a bus driver, a safety-sensitive position. Prescription medication usage relates directly to numerous medical conditions that affect a bus driver's job qualification,[4] and the plaintiff points to no medications that he was required to disclose but that was unrelated to the ability to be a bus driver.  Compare Cheyenne Mountain, 920 F. Supp. at 1154, with Wyland v. Boddie-Noell Enterprises, Inc., 165 F.3d 913 (4th Cir. 1998) (per curiam) (unpublished disposition) ("[The employer]'s

---

[4] See (Okoronkwo Decl. Ex. 5); 49 C.F.R. §§ 391.41(b)(4), (b)(6), (b)(8), (b)(9) (listing various disqualifying medical conditions about which the Physical Exam Report form inquires); N.Y. Comp. Codes R. & Regs. tit. 15, §§ 6.10(b)(3), (b)(5), (b)(7), (b)(8) (same).

inquiry into and testing of [the employee] for prescription drug use was both job-related and necessary for a business purpose-- [the employer] needed to ensure that [the employee] was capable of driving the company car as required to perform his job . . . , and also needed to ensure the safety of the general public and protect itself from potential liability.")[5]  In view of the safety-sensitive nature of the job as a school bus driver, these inquiries with respect to prescription medication usage were job-related and the plaintiff has failed to present any evidence that they were not.  Because § 12112(d)(2)(B) permits "preemployment inquiries into the ability of an applicant to perform job-related functions," these inquiries, unlike the medical examination, were not even a "technical violation" of the ADA and could not give rise to liability for damages.  42 U.S.C. § 12112(d)(2)(B).

In conclusion, nothing in the evidence indicates that any of the medical examinations and inquiries were overbroad or otherwise not job-related, and the plaintiff has failed to establish that such examinations or inquiries caused him cognizable injuries under the ADA.  Therefore, the Magistrate

---

[5] Both the Cheyenne Mountain case, which the plaintiff relies on, and the Wyland case dealt with 42 U.S.C. § 12112(d)(4), which applies to employees, instead of § 12112(d)(2), which applies to job applicants.  Nevertheless, they are relevant to the extent that they shed light on the permissible scope of job-related medical inquiries under the ADA.

Judge correctly recommended that the defendants' motion for summary judgment be granted and that the ADA claim be dismissed. Accordingly, there is no need for the Court to consider the issue of successor liability, and the claim against First Student must also be dismissed.

## IV.

Finally, the plaintiff objects to the Magistrate Judge's Report and Recommendation to the extent that the Report and Recommendation did not address the defendants' motion for declaratory relief in their motion for summary judgment.  In the defendants' motion for summary judgment, the defendants additionally moved for an order declaring that "G & G did not violate any provision of the Americans with Disabilities Act," that "G & G's decision not to hire the plaintiff was based on a legitimate and nondiscriminatory business reason," and that "First Student, Inc. is not liable under the successor liability doctrine."  (Defs.' Mot. Summ. J. at 1-2.)

However, declaratory relief may only be granted "upon the filing of an appropriate pleading."  28 U.S.C. § 2201.  The defendants never counterclaimed for declaratory relief in their answer or any other pleadings, and there was therefore no such claim to be addressed in the motion for summary judgment. Moreover, it is difficult to see how the plaintiff has any

14

complaint over the failure of the Magistrate Judge to consider a claim by the defendants that was never made.  There was no error in the Magistrate Judge's failure to consider the defendants' argument for declaratory relief.

## CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  The Report and Recommendation of the Magistrate Judge is **adopted**.  The defendants' motion for summary judgment is **granted** and this action is **dismissed** with prejudice.  **The Clerk is directed to enter Judgment and to close this case.**

**SO ORDERED.**

**Dated:**   **New York, New York**
            **September 25, 2013**                    _____/s/_____
                                                    **John G. Koeltl**
                                            **United States District Judge**